## GOSLING *v.* GRIFFIN.

### (*Jackson.*  April  Term,  1875.)

BILLS AND NOTES.  *Payment to original holder after transfer, as collateral, without notice of transfer.*

Payment of, a negotiable promissory note; made to the original holder, after indorsement and delivery thereof--even as collateral security— is no defense to a suit on the note by the indorsee, although the payment was made by the maker without notice or knowledge of the transfer.

Cases cited and approved : Mutual Protection Co. *v.* Hamilton, 5 Sneed, 277 ; Sugg *v.* Powell, 1 Head, 221 ; 20 N. Y., 138; 20 Pick., 545 ; 6 Met., 7.

Cited and distinguished : Clodfetter *v.* Cox, 1 Sneed, 330 ; Van Wick *v.* Norvall, 2 Hum., 192.

Cited and overruled : Vatterlien *v.* Howell, 5 Sneed, 441.

(See Smith *v.* Hubbard, 307.).

---

### FROM  SHELBY.

---

Appeal in error from the First Circuit Court of Shelby County.

RANDOLPH, HAMMOND & JORDAN for Gosling.

THOS. A. RYAN for Griffin.

H. E. JACKSON, Sp. J.  The material facts of this case necessary to be noticed in determining the legal question presented by the record are the following: On the 9th day of January, 1872, the defendant, T. S. Griffin, executed and delivered to Pollard & Co. his negotiable promissory note for the sum of $598, payable thirty days after date,

47

the consideration for said note being the proceeds of a buggy which Pollard & Co. had placed in said Griffin's hands for sale, and which he had sold and used and appropriated the money. The payees in said note, being indebted to Plaintiff Goslin in the sum of $554.25, evidenced by his acceptance, which matured 3d of January, 1871, and which had been placed in the hands of attorneys at Memphis for collection on the 10th day of January, 1871, indorsed in blank the defendant's said note for $598, and delivered it to the plaintiff's attorneys as collateral security for the indorser's acceptance, which said attorneys held for collection. Said attorneys, at the time of receiving defendant's note from said Pollard & Co., gave to the latter a receipt, specifying that said note was received by them as collateral security for the payment of said Pollard & Co.'s acceptance for $554.25, due 3d of January, 1871.

It appears that the defendant, after the date of this transfer, and before the maturity of his said note, delivered to Pollard & Co. several lots of flour and meal in payment and satisfaction of his note. This flour and meal, to the amount of $613, was delivered on the 25th, 26th, 29th, and 30th of January, 1871, without notice or knowledge on the part of defendant that his note had been previously indorsed and transferred by Pollard & Co to plaintiff. He accordingly refused to pay the note at its maturity, and was sued thereon by the plaintiff in First Circuit Court of Shelby County.

Among other pleas not necessary to be noticed, the defendant plead that said note was not transferred to the plaintiff in due course of trade, but was given to the plaintiff by the firm of Pollard & Co. as collateral security for a debt which the said Pollard & Co. owed the plaintiff; and, further, that the defendant paid said note to the firm of Pollard & Co. without notice from the plaintiff that he had the note assigned to him, and of this he put himself upon the country.

By consent of parties a jury was waived, and the case was tried by Court, and resulted in finding "that, though the note was assigned before maturity, it being received as collateral to secure a pre-existing debt, the defendant should have been notified of the assignment; and the plaintiff cannot recover on the note, because defendant was not so notified before paying the note to Pollard & Co." Court thereupon gave judgment for the defendant, from which the plaintiff has appealed in error to this Court.

In rendering judgment for the defendant upon the foregoing facts, the court below followed the case of *Vatterlien* v. *Howell*, 5 Sneed, 441, which presented the direct question here presented, and is conclusive of the present case, if it is to be adhered to as authority. In *Vatterlien* v. *Howell* the material facts were that Howell & Co., on the 10th of March, 1856, executed to F. S. Brown & Co. their promissory note for $208.50, due at six months. On the 15th day of May, 1856, Brown

& Co., the payees, indorsed and delivered said note to Vatterlien as collateral security for the payment of a pre-existing debt due from them to him. Vatterlien gave the makers no notice of this assignment of the note to him; and on the 30th of July, 1856, before the note matured, the maker paid the amount thereof to Brown & Co., the payees. When the note was due Vatterlien sued the makers, and it was held that this payment to the payees before maturity and after the assignment of the note—having been made without notice of the transfer—was a good defense against the suit of said Vatterlien. This decision seems to proceed upon the idea that an indorsee of negotiable paper, who receives it before maturity as collateral security for or in payment of an antecedent debt, is bound to notify the maker of his being the holder in order to protect himself against payment by the maker to the original holder or payee; that, in the absence of such notice, an indorsee must show himself to be a holder for value and in due course of trade in order not to be bound by the maker's payment to the original payee, although made before maturity and after transfer of the note. We cannot assent to the correctness of this principle as applied to negotiable paper. It in effect places such paper upon precisely the same footing as open accounts, and, in our opinion, attaches a condition to the legal and complete transfer of negotiable instruments which is supported neither upon principle nor authority.

It was decided in *Clodfetter* v. *Cox*, 1 Sneed, 330, that the assignee of equitable rights and open accounts must give notice to the debtor or holder of the fund, of the assignment, in order to protect himself against subsequent payments by the debtor to the assignor. But in the subsequent cases of *Mutual Protection Company* v. *Hamilton*, 5 Sneed, 277, and *Sugg* v. *Powell*, 1 Head, 221, it was held that this doctrine as to notice had no application to the assignment of negotiable paper or of instruments which, though not negotiable by the law merchant, are made assignable by law, so as to pass the legal interest or title and permit the assignee to sue in his own name.

The rule announced in these cases is irreconcilable with the position assumed in *Vatterlien* v. *Howell*. No authority is cited to sustain the proposition or conclusion of law laid down in *Vatterlien* v. *Howell*, except the case of *Van Wick* v. *Norvell*, 2 Hum., 192, which fails to support the decision. The contest in *Van Wick* v. *Norvell* was between the true owner of the notes and a party holding them as collateral security. The former prevailed upon principles well settled in our decisions; but Judge Green, who delivered that opinion, recognizes the fact that a pre-existing debt was a good consideration as between the holder and the individual from whom he received the paper, though it would not be sufficient to entitle him to hold against the true owner. The consideration on which Vatterlien received the transfer of the note from

Brown & Co. being a good one as between themselves, and that transfer having vested him with legal title to the note so as to dispense with the necessity of his giving notice of the assignment, the conclusion seems to be inevitable that a payment by the maker to the original payee, after such transfer and before maturity, should not be held good against the holder.

Again: the decision in *Vatterlien* v. *Howell* ignores the distinction that should manifestly be taken between the payment of a negotiable note made after its transfer and such a payment before assignment. The latter is the proposition discussed by the Judge delivering that opinion. He says:

"The argument is that if a party pay a negotiable paper [as this is] before maturity, and fails to take it up, he does it at his peril; and if it is afterward assigned before maturity, the assignee has a right to enforce its repayment."

After correctly saying that this doctrine was too broadly stated, the opinion proceeds:

"It is true that if a party pay negotiable paper before due, and fail to take it up, and it is afterward, and before maturity, negotiated in due course of trade, the assignee, being an innocent holder for a valuable consideration, would be entitled to enforce its payment. But it is equally true that, if it is taken in payment of, or as collateral security for, a pre-existing debt, it is not negotiated in due course of trade, and the holder would stand in no better situation than the payee, and would be sub-

Gosling *v.* Griffin.

ject to all defenses which might be made against it in the hands of the payee."

This was undoubtedly a correct statement of the law as applicable to the case of payment of negotiable paper made before its transfer or assignment. But it did not follow from this principle, as the Court concluded therefrom, that a payment made after such transfer or assignment would stand upon the same footing and be equally available as a defense to an action by the holder. The indorsement and delivering of negotiable paper as collateral security for pre-existing indebtedness is a transaction of daily occurrence in all commercial communities. It is a legitimate use of such paper, and if the person so receiving it does not become thereby a holder for value and in due course of trade, according to the law merchant, so as to cut off all defenses, he is certainly entitled to protection, as against payments made or equities arising between the maker and indorser after the date of such transfer. The business of mercantile communities is to a great extent transacted through the medium of bills of exchange or promissory notes; and this free circulation of such paper is a matter of too much importance to be restricted by adhering to an adjudication not founded upon principle nor supported by authority. Our decisions have gone sufficiently far in holding that negotiable paper, transferred in payment of a pre-existing debt or as collateral security, is subject to all equities or defenses existing against the paper at the time of its transfer;

and we are unwilling to extend the principles of these decisions so as to let in defenses arising after such transfer.

Every maker of negotiable paper knows, as a matter of law, that it is transferable, by indorsement, so as to pass the legal and complete title to the paper, and the debt evidenced thereby, and it is his duty to pay to the holder on production of the note. Payments of negotiable paper before it is due, and in the absence of such paper, are not made in due course of business, and the party so paying should be held to do so at his own risk; for when the title has passed by indorsement and delivery of such paper, the actual holder alone has the right to receive the money due thereon, and the maker, in paying to the original payee after such transfer, in the absence of the paper, either before or after its maturity, must abide the consequences of making payment to a party not entitled to receive it. Our Legislature, in providing indemnity for makers of lost negotiable paper when sued thereon, proceed on the principle that the actual legal holder thereof could lawfully compel a repayment to himself.

We therefore hold that in case of negotiable paper the maker is not discharged if, before the maturity of the paper and after its transfer—even as collateral security—he makes payment to any person other than the real holder. This conclusion is fortified by the rule applicable to over-due negotiable paper. When such paper is indorsed and transferred after

maturity, the maker can avail himself only of such matters of defense as existed between himself and the promisee or indorser at the time of the actual indorsement and transfer of the note to the holder. This is so both upon the principles of the law merchant and under the provisions of our statute of set-off. It is founded upon the well-settled rule that a note does not cease to be negotiable because it is over due. The payee by his indorsement may still communicate a good title to the indorsee; nor can the maker, when sued thereon, rely on matters of defense against the indorser which arose after such transfer, although he had no notice of the transfer at the time of acquiring his defense. The maker has no right to presume that such overdue paper, which he has made negotiable, and on which he agrees to be liable to the actual holder or indorsee, remains in the hands of the original payee. And if he pays to the original promisee, without requiring the production of the paper, he does it at his own risk.

This is the true distinction between the assignment of open accounts or equitable interest in a fund and the indorsement of a negotiable note.

In the former case notice of the assignment must be given to the debtor to protect the assignee against future payments to the assignor. Such assignee acquires only an equitable title, and in absence of such notice the debtor may reasonably presume that the original creditor still holds or controls the claim, and may accordingly make pay-

ments to him in the ordinary course of business. But the indorsee of an over-due negotiable note acquires a full legal title, with the sole and exclusive right to demand and receive payment thereof. His rights being only subject to the equities and defenses existing against the paper at the time of its transfer to him, no defenses against the original payee acquired after the transfer are available against him.

Now, it is manifest that negotiable paper, taken as collateral security for pre-existing indebtedness before maturity, and before any equities or defenses exist against it, must stand upon the same footing as the transfer of over-due paper. The holder in neither case is considered a holder for value in due course of trade under the law merchant. Both are subject to all equities existing at the time of the transfer, but neither are subject to defenses arising after such transfer.

The foregoing doctrines are, we think, supported both by principle and authority. See *Carr* v. *Lewis*, 20 N. Y., 138; *Wheeler* v. *Guild*, 20 Pick., 545; *Baxter* v. *Little*, 6 Met., 7; Edwards on Bills and Notes, marg. 537, 538.

Our conclusion is that the case of *Vatterlien* v. *Howell*, 5 Sneed, 441, was not correctly decided, and should not be adhered to as authority.

It follows from the principles already announced that the defendant's payment to Pollard & Co., the original payee of the note sued on, made before its maturity, but after the date of its indorsement

Gosling *v.* Griffin.

and transfer to the plaintiff as collateral security, constitutes no valid defense to the plaintiff's suit upon said note, although the defendant may have had no notice of such transfer at the time of making such payment.

It results, therefore, that the judgment of the Circuit Court must be reversed, and that the plaintiff have judgment here upon the note, with cost of suit.

This case is reported on account of its importance, and by request of many members of the bar. It has been cited as authority in Richardson *v.* Rice, 9 Bax., 290; Sawyer *v.* Moran, 3 Tenn. Ch., 35; and in 1 Daniel's Neg. Inst., Sec. 830, n. 2 (3d Ed.); also in 30 Federal Reporter, p. 596, in a note to an opinion by Judge E. S. Hammond, in case of Exchange National Bank *v.* Johnson. It was published in Southwestern Reporter, Vol. 3, p. 642.