### KATHERINE PARKER et al. v. CARL E. LUTTRELL et al.

Eastern Section. July 25, 1925.

No petition for Certiorari was filed.

1. **Bills and notes. Party who makes payment on a note before maturity must see that payment is credited on the instrument.**
   In an action to recover on a promissory note where the evidence showed that the maker had made payments on the same to the original payee but the same had been transferred before maturity and credits were not made on the note, held that the maker of a negotiable instrument is charged with a duty of seeing that any payments made prior to the maturity of the instrument are credited thereon and if the instrument has been negotiated before maturity without credits endorsed thereon, the maker is liable to the holder, even though he has paid the original payee.

2. **Bills and notes. Bona fide holder is not bound by special instructions or purpose between the maker of the note and payee.**
   It is no defense against a bona fide holder to show that the person to whom the paper was intrusted was authorized to use it only for a particular purpose, and he fraudulently used it for a different purpose.

3. **Bills and notes. A negotiable instrument can be satisfied before maturity only by payment to the holder or a party authorized to collect the same.**
   The burden is on the maker where he pays a negotiable instrument before maturity to show that the party to whom he made the payment was either the holder or authorized to collect for the holder.

4. **Bills and notes. Taxation. Where the owner of a negotiable note fails to list the same for taxation the defendant may invoke subsection 7 of section 8 of chapter 602 of the Acts of 1907 and avoid court costs.**
   In an action to recover on promissory notes where the defendant pleaded and the evidence showed that the notes had not been listed for taxation, held that the action came within the perview of subsection 7 of section 8, chapter 602 of the Acts of 1907 and that the plaintiff was liable for the court costs in collecting and a lien was established against the recovery to the amount of the taxes due.

Appeal from Chancery Court, Knox County; Hon. Chas. Hays Brown, Chancellor.

Decree of Chancellor modified, affirmed and remanded.

Green & Webb, of Knoxville, for appellant.

Roy H. Beeler and J. Alvin Johnson, of Knoxville, for appellee.

SNODGRASS, J. This is a suit by independent holders to collect two promissory notes, and to foreclose a lien evidenced by a trust deed which the respective holders of the notes held on the single piece of property described in the bill. The defendant, W. L. Jack, was made party in his capacity as trustee in the deed of trust.

The defendants, Carl E. Luttrell and wife, were the original makers of the two $1000 notes, and gave the deed of trust on the property to secure their payment.

Afterwards the said Luttrell and wife conveyed the property thus encumbered by the deed of trust to the defendant, T. B. Carr, who assumed the payment of the said two notes, and, as he thought, paid for sometime the interest thereon to one S. R. Rambo, and from time to time certain parts of the principal, until the notes had been, as he thought, reduced to about the sum of $600, when the curtain was lifted by the failure and bankruptcy of S. R. Rambo and S. R. Rambo & Company, revealing a very saturnalia of ruin and disaster to hundreds of confiding people, running in the aggregate to hundreds of thousands of dollars, revealing victims of possible misplaced confidence by the score, and, among them, the makers and those involved on the notes in question.

Upon these disclosures the holders of the two notes in question, Katherine Parker, in her own right as the holder of one of the notes, and the complainants Charlton Karns and John W. Green, as the executors of Florence E. Wingert, as the holders of the other one thousand dollar note, filed this bill against the original makers, Luttrell and wife and T. B. Carr, who it is alleged assumed the payment thereof, to collect the same, and the defendant W. L. Jacks, as trustee, a necessary party to foreclose the deed of trust.

As appearing in the bill,

"The complainant, Katherine Parker, respectfully shows to the court that she is the owner and holder of a note executed on June 23, 1919, by the defendants, Carl E. Luttrell and wife, Hattie Luttrell, payable to the order of S. R. Rambo, twelve months after date, for $1000, with interest from date payable semi-annually.

"The complainants, Karns and Green, executors, show to the court that they are the duly and regularly qualified executors of Florence Wingert, deceased, appointed by the county court of Knox county, Tennessee, and as such are the owners and holders of a note executed by the defendants, Carl E. Luttrell and wife, Hattie Luttrell, on June 23, 1919, payable to the order of S. R. Rambo, twelve months after date, for $1000, with interest from date, payable semi-annually."

It was also alleged that the said notes were brought from the said Rambo before maturity, for value and in due course of trade,

and that no part of the principal has been paid, and that the notes, together with interest and 10% attorneys fees provided in the face of the notes were past due and unpaid, and that payment thereof had been demanded and refused.

That both of said notes were secured by the same trust deed executed by the defendants, Carl Luttrell and wife, Hattie Luttrell to the defendant, W. L. Jack, Trustee, of record in Trust Book 222, page 164, of the Register's Office of Knox county, Tennessee, upon property described as follows:

"Situated in the Fifth Civil District of Knox county, Tennessee, viz: Being a part of S. J. Tarver tract and lying on the North side of the Little Flat Creek, and particularly described as follows: Beginning at a stake in the center of the Traver Mill Road on the bridge; thence with the center of said road N. 42 degrees 10″ W., 426 feet to a stake; thence N. 62½ degrees W, 521 feet; thence North 71 degrees W, 126 feet to a stake in the center of the road and in a cross line; thence with said line N, 55 degrees E, 994 feet to a stone Cox's corner; thence S. 35 degrees E, 538 feet to a stone, corner to Cox; thence N, 64½ degrees E, 1140 feet to a stake in the center of Flat Creek; thence up the center of the said Little Flat Creek with its various meanders 5100 feet to the beginning, containing 51.9 acres more or less."

Copies of the said notes and the trust deed were filed as Exhibits A, B and C to the bill, and prayed to be taken as part of the bill, and are here referred to as such exhibits and made part hereof.

It was further alleged that the defendants, Luttrell and wife sold and transferred the property covered by the trust deed aforesaid to the defendant, T. J. Carr, and that the said Carr made himself liable for the said notes by expressly assuming the payment thereof in the deed made to him by the said Luttrell and wife, and further that the interest had been paid on the said notes up to Dec. 23, 1923, but that the notes themselves fell due on June 23, 1924, and that defendants had defaulted in the payment of both the principal and interest, and have rendered themselves liable as above indicated for the ten per cent attorney's fees in addition to the principal and interest.

It was further alleged that the trust deed contains a provision for the protection of said notes by means of fire insurance policies, and that the makers have failed to keep the said fire insurance policy in force, and that by the terms of the trust deed for this reason, as well as for other reasons, the notes have become due and payable.

That S. R. Rambo, the payee and guarantor of the said notes has gone into bankruptcy, and that complainants do not waive, but expressly reserve their rights against him as the guarantor and endorser of the said notes; that the complainants knew nothing about the deed from the said Luttrell and wife to the said Carr until within the last few days and since the affairs of Rambo have become involved in the receivership and bankruptcy proceedings, and that they have taken the first opportunity of bringing this suit and asserting their rights. The bill prays for specific and for general relief.

The defendant, W. L. Jack, Trustee, filed his answer admitting that on June 23, 1919 the defendants, Luttrell and wife executed to him, as trustee, a trust deed conveying the property described in the bill to secure the payment of two notes of the said Luttrell and wife of even date with said deed for $1000 each, payable to the order of S. R. Rambo, and due twelve months after date. He admits that said trust deed is recorded, as alleged in the bill. He does not admit or deny that the exhibits to the bill are true copies of said notes and trust deed, and demands that they be produced. He does not admit or deny the other allegations, and demands strict proof of same.

The defendants, Luttrell and wife and T. J. Carr file an answer and say:

"Answering the first section of complainant's bill, these respondents deny that Katherine Parker, complainant, is the owner or holder of a note executed on June 23, 1919 by respondents Luttrell and wife, payable to the order of S. R. Rambo twelve months after date for $1000 with interest from date, and respondents call upon the complainants for strict proof touching this allegation."

They neither admit nor deny that complainants, Karns and Green are the duly and regularly qualified executors of Florence Wingert, deceased, but if such fact becomes material they call upon the complainants for strict and plenary proof touching this allegation. Further answering, they say:

"Respondents deny that the complainants, Karns and Green, as executors are the owners and holders of a note executed by respondents, Luttrell and wife, on June 23, 1919, payable to the order of S. R. Rambo, twelve months after date for $1000 with interest from date. Respondents deny that said notes were bought from the said Rambo before maturity, for value and in due course of trade; and respondents deny that no part of the principal has been paid; and they deny that said notes, with interest and attorneys fees as provided in the face of said notes, are past due and unpaid."

Answering the second section of the bill, respondents admit that respondents Luttrell and wife on or about June 23, 1919 executed a trust deed to respondent W. L. Jack, Trustee, covering the property described in the second section of the bill, for the purpose of securing the payment of two notes for $1000 each, of even date with said deed and payable to the order of S. R. Rambo. Respondents presume that the description of that property contained in the bill is correct, but if this fact becomes material they call for strict proof; they likewise presume that the purported copies and trust deed annexed to the original bill are correct, but they neither admit nor deny this fact, since they did not have said copies before them in answering this bill.

They admit that respondents Luttrell and wife sold and conveyed the property covered by the trust deed to the respondent Carr, and that respondent Carr assumed the payment of the balance due on said two notes above referred to.

It is further stated and insisted in the answer, as follows:

"Respondents show that on June 17, 1922 respondent Carr paid $60 interest on said notes to S. R. Rambo; that on December 18, 1922, he paid $60 on said notes to said Rambo; that on December 20, 1923 he paid $60 interest on said notes to said Rambo. Receipts were taken for said payments of interest, and copies thereof are annexed hereto marked Exhibits A, B and C to this answer."

(Such receipts were so taken, and they are as such exhibits here referred to and made part hereof.)

Continuing, it is further stated:

"Respondents further show that on December 20, 1923, respondent Carr paid to said S. R. Rambo $1000 on the principal of said notes; that on December 27, 1923 he paid $300 to said Rambo on the principal of said notes; that on March 13, 1924 he paid $100 to said Rambo on the principal of said notes. Receipts for said amounts so paid were taken, and copies thereof are hereto annexed as Exhibits D, E and F."

(Receipts were so taken, and they as such exhibits are here referred to and made parts hereof.)

It is averred in said answer that at the time of said respective payments above referred to S. R. Rambo or S. R. Rambo & Company were the owners and holders of both of said notes, and that at said time said notes had not been transferred to the complainants; but it was averred that, if respondents were mistaken in this position, the said S. R. Rambo or S. R. Rambo & Company were the agents of the complainants for the purpose of collecting said notes and the interest thereon and receipting for same, and for the purpose of extending the time of payment of said notes, and of doings all things in connection therewith in as full, complete and

ample a manner as could have been done by the complainants; that in fact said notes were renewed from time to time by the payment of said respondents to the said Rambo and Rambo & Company of certain sums of money for renewal fees, and the said Rambo and Rambo & Co. divided said renewal fees as the same were paid from time to time with the complainants; that this is not only true with reference to the notes in question, as respondents are advised, but with reference to a very great number of other notes on different people; that in fact respondents are advised that the said Rambo and Rambo & Co. were the general agents of the respondents (meaning complainants) for the purpose of loaning their money, collecting interest on notes, receipting for same, extending the time of payment, etc. And respondents insist that payment as above set forth to the said Rambo and Rambo & Co. constituted payment of said notes, and that respondents cannot be required to again pay the same.

It was further denied that complainants were bona fide purchasers for value of said notes or either of them before maturity. They insisted that if complainants held said notes at all, they held them subject to all defenses that would avail against said notes if. they were still in the hands of the original payee. It was further averred that said notes as originally executed were due and payable on June 23, 1920, and that from that time down to within some two or three months ago these respondents had no knowledge that anybody claimed to be the owners of said notes except the original payee, and that respondents had no notice that the complainants claimed to own said notes, notwithstanding the fact that respondents have lived in Knox county all of said time and could have been notified by the complainants; and that due to the fact that complainants have been dilatory and derelict in notifying respondents in this regard, the complainants have been guilty of laches and are now estopped to insist on a decree against the respondents for any amount, and particularly for the amount covered by the receipts, copies of which are annexed to this answer; and respondents plead said laches as an estoppel against the complainants to a recovery in this cause. And by an amendment had and allowed to the defendant Carr, it was further insisted that the complainants by authorizing and permitting S. R. Rambo and S. R. Rambo & Co. to receive and transmit payment of interest to them, and by permitting and authorizing the said Rambo to extend the time for payment of the principal of the notes sued on, constituted the said Rambo as their general agent for all purposes, and they are now estopped to question said agency or to repudiate the payments made by the said Carr to the said Rambo on said notes.

And by an amendment to answer allowed Carl E. Luttrell and wife, it was averred that neither complainants during the time they have held said notes sued on herein ever listed said notes for taxation as required by law, and in no event can have a decree for costs against defendants, or either of them.

Proof was taken upon the issues thus defined, and the case came on to be heard before the Chancellor upon the whole record, when it was held and decreed:

1st. That the complainant, Katherine Parker, before maturity, for value, and in due course of trade, purchased from S. R. Rambo a note for $1000, dated June 23, 1919, executed by the defendants, Carl E. Luttrell and wife, Hattie Luttrell to the said Rambo, due twelve months after date; and that the complainants, Charlton Karns and John W. Green, Executors, before maturity, for value, and in due course purchased from S. R. Rambo, a note for $1000, dated June 23, 1919, executed by the defendants, Carl E. Luttrell and wife, Hattie Luttrell to S. R. Rambo, due twelve months after date; and that the said Katherine Parker, and the said Karns and Green, executors, were at the time of the filing of the bill in this cause, and are now innocent holders and owners respectively of the said two notes.

That the said notes were secured by the trust deed executed on the 23rd day of June, 1919 by the defendants, Carl E. Luttrell and wife, Hattie Luttrell, to W. L. Jack, Trustee, upon the property hereinbefore described, and that both of the said notes are past due and are wholly unpaid, and are not entitled to any offsets or credits, and that in addition to the principal and interest of said notes they provide in their face for ten per cent (10%) attorneys fees in case they are placed in the hands of an attorney for collection or have to be sued on; and that there is due to Katherine Parker upon her said note $1000 principal, $68 interest and $100 as attorney's fees, or a total of $1168; and that there is due to Karns and Green, executors, on their said note at this time $1000 as principal, $68 interest, and $100 attorney's fees, making a total of $1168.

That on the 14th day of October, 1920, the defendants, Carl Luttrell and wife, Hattie Luttrell, conveyed the above described property by warranty deed to T. J. Carr and wife, Lettie Carr, and that the said T. J. Carr and wife by the terms of said deed assumed and agreed to pay the said two notes of $1000 each held respectively by the complainant, Katherine Parker, and the complainants, Karns and Green, Executors.

That the defendant, T. J. Carr, after assuming said indebtedness paid the interest thereon to S. R. Rambo up to Dec. 23,

1923, and that on the 27th day of December, 1923, the said T. J. Carr paid to the said Rambo $1300, on the principal of said notes, and on March 13, 1924 the defendant T. J. Carr paid to the said Rambo $100 on the principal of said notes, but that at the time the said Carr made the said payments upon the principal of the said notes to the said Rambo, the said Rambo was not the owner and holder of the said notes, and did not have the same in his possession, and was not authorized to receive the said payments, but that at the time the said payments were made the said notes were in the hands of the complainants, Katherine Parker, and Karns and Green, executors, who were then the lawful owners and holders thereof, and that by reason of the fact that the said payments were not made to the real owners and holders of the said notes, the same were not valid payments and do not entitle the said Carr to a credit therefor as against the complainants.

The court further held that the said Rambo was not the agent of complainants at the time he received the said payments, and that he was not authorized to receive them, and that for this reason the defendants' plea and defense of "payment" is not sustained by the facts or by the law.

It was accordingly ordered, adjudged and decreed that Complainant, Katherine Parker, have and recover of and from the defendants, Carl Luttrell and wife, Hattie Luttrell and T. J. Carr the sum of $1175.17, for which execution was directed to issue; and that complainants Karns and Green, executors, have and recover of and from the defendants, Carl Luttrell and wife, Hattie Luttrell and T. J. Carr the sum of $1175.17, for which execution also was awarded. It was further decreed that unless the said respective amounts are paid to complainants within 30 days from date that the trust deed be foreclosed by a sale of the above described property; and the master was directed that if the indebtedness was not so paid to advertise the same for sale in some newspaper published in Knoxville as required by law, and sell the same in front of the North door of the Court House in Knoxville for cash to the highest bidder and in bar of the equity of redemption as provided in said trust deed, and report his action in the premises as soon after said sale as was practicable.

Defendants excepted to said decree and prayed an appeal to the Supreme Court, which by agreement was transferred to this court, and in the exercise of his discretion the Chancellor allowed the appeal in advance of the sale provided for.

The parties, for convenience, will be referred to as the case was styled below.

The defendants have assigned:

1st. "The Chancellor erred in holding that the appellees were at the time of the filing of the bill in this cause, and at the time of the entry of the decree, innocent holders and owners for value, and before maturity, of the two notes for $1000 each, sued on in this case."

2nd. "The Chancellor erred in holding that the said two notes were wholly unpaid, and that the appellants were not entitled to any credits thereon."

3rd. "The Chancellor erred in holding that appellant, T. J. Carr, was not entitled to credit on account of the principal amounts of said two notes in the sum of $1400, paid by him to S. R. Rambo, or S. R. Rambo & Co."

4th. "The Chancellor erred in holding that the said S. R. Rambo & Rambo & Co. was not at the time of the payment of the $1400 the agent of the appellees."

5th. "The Chancellor erred in holding that the appellees were entitled to a decree for costs of this proceeding against the appellants, since it is shown that neither of the appellees listed said notes for taxation as required by law."

6th. "The Chancellor erred in holding the appellants liable for the full amount of said notes, with interest and attorney's fees thereon, together with costs of this proceeding, and in pronouncing decree accordingly."

The facts of this case, are:

On June 23, 1919, the defendants, Carl Luttrell and wife, Hattie Luttrell, executed their two promissory notes for one thousand dollars each to S. R. Rambo, or order, payable twelve months after date, with interest payable semi-annually.

On February 2, 1920, before the maturity of the said notes, the complainant, Katherine Parker, bought from S. R. Rambo one of the said notes, paying therefor one thousand dollars, and Florence E. Wingert bought the other of said notes from the said S. R. Rambo, paying therefor one thousand dollars. (Mrs. Wingert is now dead and this suit was brought on behalf of her estate by her executors) S. R. Rambo, the payee in the said notes, endorsed the same and guaranteed their payment, and paid the interest thereon each six months thereafter promptly as it fell due, up to December 23, 1923. Immediately upon purchasing the said notes, Miss Parker and Mrs. Wingert took them into their possession together with the trust deed securing the same, and kept them continuously in their possession until this suit was brought.

The defendants, Carl Luttrell and wife, secured the payment of the said two notes by a trust deed on a farm situated in the Fifth Civil District of Knox county, Tennessee. When the notes fell due

on June 23, 1920, they were extended for an additional period of twelve months, that is up to June 23, 1921, and on this last-named date they were in like manner extended up to June 23, 1922, and on that date they were again extended to June 23, 1923, and finally, on June 23, 1923, the time of payment was extended until June 23, 1924.

The notes were purchased through Green & Webb, attorneys for Miss Parker and Mrs. Wingert, and these attorneys, who examined the papers and the security, and investigated the title, or became responsible for the title, and saw that the taxes were kept up and the interest collected and transmitted, charged a fee of twenty dollars for their services when the notes were originally purchased, and thereafter twenty dollars, for each renewal thereof, which fees were paid by Rambo. All the interest payments were made by Rambo, the endorser and guarantor, and neither Miss Parker nor Mrs. Wingert, nor their attorneys ever had any communication with the makers of the notes.

On October 14, 1920, the defendants, Carl Luttrell and wife, Hattie Luttrell, conveyed the property covered by complainants' trust deed to the defendants, T. J. Carr and wife, Lettie Carr, who expressly by the terms of their deed assumed the payment of the two notes owned by the complainants. Thereafter the defendant Carr paid to S. R. Rambo, on December 20th and December 27th, 1923, the sum of $1300, and on March 13, 1924, the sum of $100, which he intended to be applied on the principal of said notes, and took the said Rambo's receipts therefor. Carr also paid to Rambo from time to time the interest on the said notes. The defendant, Carr, does not question complainants' right to collect the remaining $600 of principal from him, together with interest on said sum, but he claims that complainants are not entitled to collect the fourteen hundred dollars which he paid to Rambo. Carr testified that when he made the payments to Rambo on the principal of the notes he asks that they be credited on the notes and that he "supposed" it had been done, and that he took Rambo's receipts for the said payments. Carr's testimony upon this point is as follows:

> "I supposed they were crediting the notes. . . . The fact is I didn't give myself special concern about that, I thought everything was all right; that I was dealing with a reliable man."
>
> Q. "You knew those notes were negotiable, didn't you? A. Yes, could be sold."
>
> Q. "And you knew that Rambo was in the note business, didn't you? A. I didn't know he was dealing just that way."

Q. "Still you knew he was dealing in notes? That was notorious wasn't it? A. I couldn't say. I had information that he was. I didn't know that."

Q. "But regardless of what your information was on the subject, you knew you were obligated as having assumed these notes, and you knew that these notes were negotiable, and you didn't take the pains to take up these notes or see that these credits were made on them? A. No, I didn't, that is evident."

Q. "Did you ask them to credit the notes with these payments? A. I made these payments in good faith; I thought he credited them and I was intending when I finished paying to get the notes, as they were of even date; that is how I had it in my mind."

Q. "Now Doctor, at the time you made the three hundred dollar payment, and at the time you made the thousand dollar payment, neither of these notes were due, were they? They had been renewed so that neither of them was due, isn't that so? A. I suppose it is."

Q. "And at the time you made the hundred dollar payment, neither of these notes was due? A. No."

Q. "You made these payments without demanding to see the notes and without requiring the credits to be made on the notes? A. My information was that he had the notes in the bank, and I meant to finish up before a great while and of course would demand the notes, and I went ahead in good faith. I admit it was a little careless, but I thought he was all right."

The complainants in this case never authorized Rambo, nor any one connected with his office, to collect any part of the principal of the said notes, and they did not know that the defendant had paid any part of the principal, and they never received any part of the principal.

In May, 1924, just a short time before the maturity of the notes sued on, it was discovered that Rambo had collected from two hundred and fifty to three hundred thousand dollars of money on the notes which he had sold and negotiated, and which were outstanding and held by outside third persons at the time he made the collections, and to whom he never accounted for one cent of the money thus misappropriated and embezzled. Prior to this discovery Rambo was regarded as abundantly solvent. He always promptly met the interest payments on the notes he had negotiated; he was reputed to be wealthy; was a member of the Church, of the County Court, and a director of the Union National Bank, and of the Union Trust Company, and stood well in the community.

Rambo and Rambo & Company seem to have stood in a position exceptionally favorable for the victimizing of the hundreds of people who have fallen heir to the consequences of their delinquencies. With their long conduct of a real estate and loan business, of such volume and apparent prosperity, and having a facility, standing and reputation in every way conducive to the greatest confidence, they were enabled for a long time to conceal the true situation of their relationship to their customers. And their rich and numerous clientele, not desiring their money, and willing to let their investments continue under apparently safe security and prompt payment of interest, afforded them an opportunity of receiving payments both on interest and principal of loans, their customers thinking that they were making such payments to the owner and holder of the notes. Defendant Carr made such payments without seeing that he had the notes in his possession, relying simply upon his assumption of possession, forgetting or apparently overlooking the fact that the notes were negotiable and liable to be endorsed and sold, as they were in this instance, to customers who only wanted their money to continue under safe employment and did not desire its diversion or change to other securities which might involve its sacrifice or idleness. He was thus for himself and his company enabled to assume with such trusting victims an ostensible relationship in regard to the securities and receive their funds, and then, representing himself and his company, to go to those people to whom he had sold the notes and procure for himself and his company an extension thereon by paying a fee of $20 on each renewal, as in the instances of the case at bar. The borrowers would think they had paid the interest, a portion or all of the principal, and the owners of the securities would think that they had but continued and renewed a live and profitable investment in negotiable notes. Rambo, or Rambo & Company in such instances, and as was the case with reference to the two notes in question in this case, in no sense represented the holders of such securities in such transactions, nor in the procuring of such extensions represented the borrowers; for they thought that they were dealing with him primarily. But he represented himself and his company in a nefarious scheme to appropriate the money thus paid to him. To conceal and further enable him to continue such business, he would pay the interest and procure an extension, for to fail to do so would bring about a revelation of the true situation by a suit in behalf of the owners of the securities to collect. A simple demand upon the part of those who were obligated to see the notes and have these sums physically credited thereon, as was their legal duty to do if they would protect themselves, would have blocked the perpetration of

the systematic scheme and saved everybody from the consequences of such folly.

"It is no defense against a bona fide holder to show that the person to whom the paper was intrusted was authorized to use it only for a particular purpose, and he fraudulently used it for a different purpose.

"It is well settled that where a negotiable bill or note is paid before maturity, it is specially important that it shall be surrendered to the payor so that further negotiation may be prevented, or, if payment is made to the original payee and the note is not surrendered but has been already or should be afterwards transferred before maturity to a bona fide holder without notice, such holder can recover thereon against the maker, notwithstanding such payment to the original payee.

"The maker of a negotiable note has no right to assume that it has not been assigned or transferred and by making payment thereof before maturity to the original holder defeat the rights of the purchaser for value before maturity. It is also the duty of the maker paying commercial paper before maturity to take reasonable precaution to prevent its restoration to circulation by accident or fraud. Failure to produce the instrument at the time of payment to the original holder is sufficient to put the maker on inquiry." . . . 3 R. C. L., pp. 1013-1016.

There is no proof in the record of any real or implied agency on the part of Rambo and Rambo & Company to represent the complainants in these transactions, nor did he do so. The only thing appearing is the assumed ostensible relationship upon the part of Rambo and Rambo & Company in receiving such payments, for which complainants are in no way responsible, as appears from the proof, as they did not know that Rambo or Rambo & Co. had received any payments ostensibly for them, or holding himself out as owning the notes, or in any representative character. At most the only thing shown in the record upon which any criticism might be based, is that Rambo secured these renewals from the attorneys of the owners of the notes, and paid them a fee upon each renewal, and that they never notified the obligors that they owned the notes. Such notice was not necessary.

"The maker must at his peril, ascertain at the time of payment whether the payee is still the owner thereof, although the purchaser of such paper does not notify the debtor of the fact of such purchase, and although the latter is ignorant thereof, still he is in law chargeable with notice of the rights of the purchaser, and therefore he pays the original creditor

at his own risk.''. Hollingshead v. Globe Co., 22 L. R. A., p. 559. (N. Dak.)

And this was even so .

"Where money was paid by the maker of a note and mortgage to the solicitor who made the loan and who for a time held the securities as agent for the payee and received the interest thereon, but the payee had withdrawn such securities before the payment of the principal was made, and the payment was made in ignorance of such 'fact,' the court held as follows: ·

" 'Such inference being founded upon the custody of the securities ceases whenever they are withdrawn by the creditor, and it is incumbent upon the debtor who makes payment to a solicitor or agent relying upon such inference to show that the securities were in his possession on each occasion when payments were made.' Williams v. Walker, 2 Sanford's Chy., 325.''

The Court further said:

"This is a case of great and peculiar hardship—one which I would gladly have relieved against were it possible consistent with the maintenance of sound and important rules of equity and with the dispensing of exact justice to the equally innocent.'' Idem.

There are numerous other authorities cited along the same line, but it would seem unnecessary to multiply them. The rule itself is founded in such manifest necessity to preserve the efficacy of the negotiable character of instruments of this kind as not to need citation, but if it did so it is furnished by the case of Gosling v. Griffin, 85 Tenn., 744, where it is said:

"Every maker of negotiable paper knows, as a matter of law, that it is transferable, by endorsement, so as to pass the legal and complete title to the paper, and the debt evidenced thereby, and it is his duty to pay to the holder on production of the note. Payments of negotiable paper before it is due, and in the absence of such paper, are not made in due course of business, and the party so paying should be held to do so at his own risk; for when the title has passed by indorsement and delivery of such paper, the actual holder alone has the right to receive the money due thereon, and the maker, in paying to the original payee after such transfer, in the absence of the paper, either before or after its maturity, must abide the consequences of making payment to a party not entitled to receive it.'' . . .

To the same effect is the case of Griswold v. Davis, 125 Tenn., 223, where it is said:

"As a general proposition the maker of a negotiable promisory note can satisfy it only by paying to the holder, or to his duly authorized agent for that purpose. . . . It is not claimed that Allen was specially authorized by Burr & Knappe to receive payment of the notes in question. The insistence is that Allen, having acted for them in making the application for the loan, in appraising the property, and in preparing the abstract of title, and also in receiving payment from Davis of one interest coupon, that this authorized Davis to rely upon the representations of Allen that he was such agent, and, though not directly authorized by his principal to receive payment, he was acting within the apparent scope of his authority. . . . There can be no basis for the debtor relying upon the apparent or ostensible authority of the agent not in possession of the written securities to receive payment. The mere act of paying the principal debt to one not the holder of negotiable instruments, and not in possession of them, is such gross negligence upon the part of the debtor that it difficult to conceive how he could rely upon an apparent or ostensible authority of such agent to receive the payment. Possession of the securities properly endorsed of itself, and in the absence of countervailing facts, clothes the agent with apparent authority to receive payment from and deliver them to the debtor. And the absence of the securities in the hands of the alleged agent is such a powerful circumstance of want of authority, that one making payment to him can not claim that he appeared to have authority to receive payment, when in fact he did not."

As to the attorneys, they never knew that Rambo was assuming any ostensible relationship with reference to their client. Rambo was a guarantor on the notes, and they were looking to him principally to see that the interest was paid; and Rambo secured from their clients, through them, each renewal, and paid to them for their clients the interest on the notes. This they had a right to do without incurring legal liability. Of course, had they known it was a fact that Rambo was securing money from those who owed the notes, claiming to be their agents to receive it, or had they known that he was holding himself out as the agent of the owners of the notes to receive such payments, and held their peace, allowing him to continue to receive such payments, then they would have been estopped to deny his right to receive it. But the record does not show such knowledge, and there was no legal obligation to publish the ownership of the notes. We find also, and as hereinbefore indicated, that complainants, Katherine Parker,

and Florence E. Wingert, deceased, now represented by complainant executors, bought the notes sued on before maturity, for value, in due course of trade, and that they are innocent holders.

That the defendant, Carr, bought the property which was mortgaged by the defendant Luttrell to secure these notes, and assumed the payment of the notes.

That the defendant Carr, knowing that the notes were negotiable, and without inquiry as to whether or not they had been negotiated, paid $1400 on them to S. R. Rambo, the original payee, without requiring the production of the said notes, and without requiring that they be credited with the said payments.

That at the time the said Carr made these payments the notes were not in the hands of S. R. Rambo, nor had they been in his possession since he sold them to the complainants, nor was he authorized to collect the notes, or any part thereof, nor did the complainants know that he had undertaken to collect the notes, or any part thereof, nor did he ever account to complainants for what he had collected, or any part thereof.

That the defendant Luttrell, the maker of the said notes, took no proper steps whatever to see that they were paid to the true and lawful holders; that he was content to leave the entire matter to Carr, who had assumed payment of the said notes; that he never inquired of Carr, so far as the proof shows, whether or not he had paid the notes, or whether or not the notes had been cancelled.

That both the said Luttrell and the said Carr were guilty of gross negligence in failing to make payment to the proper persons. Carr admits that he was careless, and Luttrell does not even go on the stand to attempt to exonorate himself from the charge of negligence and carlessness.

That Luttrell, the maker of the notes, and Carr, who assumed their payment, had it absolutely within their power to refuse to pay one penny on the said notes unless and until the notes were produced, and the proper credits entered thereon, or the notes cancelled.

That the payments made by Carr on these notes were all made before the notes were due, and without any proper effort on his part to locate the notes, or ascertain who held them, upon the unwarranted assumption that Rambo, the payee, was still the owner.

In the light, therefore, of all the facts, and of the authorities, the Chancellor was not in error upon the main question. Mr. Carr must be held to be the victim of his own folly. The Chancel-

lor's decree is affirmed, except as to the item of cost, and the assignment in relation thereto is partially sustained. It is insisted by defendants that as their notes were never listed for taxation, which appears to be the fact, that the complainants are not entitled to costs, but that under the statute, being derelict in this particular, they should pay the costs of suit to collect such notes.

Subsection 7 of section 8 of chapter 602 of the Acts of 1907, being the general assessment law, provides that there shall be assessed for taxation.—

> "Notes, due bills, choses in action, accounts, mortgages and other evidences of indebtedness, and money on hand or on deposit, or invested in any manner in this State or elsewhere, not otherwise assessed."

Said act contemplates that each taxpayer shall file a sworn schedule of his property, listing such under proper classification, including notes above mentioned, and Section 14 of said act provides:

> "That in any suit hereafter brought in any of the courts of this State, upon any note, bill, bond, or other chose in action subject to taxation under the provisions of this act it shall be competent for any defendant to such action to allege and show in defense that such note, bill, bond, or other chose in action was not given in or included in the owner's assessment for taxation for the preceding year, and upon such defense being established to the satisfaction of the justice, court or judge trying the case, the owner or holder bringing suit upon said note, bond, bill, or other chose in action shall be taxed with all the court costs of the case, and the said court shall declare in rendering such judgment a lien in favor of the State, county or municipality to which said unpaid taxes are shown to be payable, said lien to be discharged by a release on the docket of said court showing the payment of the said taxes, said release to be executed by the proper tax collecting officer or officers; Provided, all renewals of notes, bills, bonds, or other choses in action shall be treated as one continuous debt; and Provided, further, that unsettled accounts shall not be included in this section."

It does appear from the proof in this cause, and the bill, that Miss Katherine Parker was a citizen of Knox county, this State; that she has been the owner of this note for several years, having purchased it in February, 1920, and upon the statement that it had never been listed for taxation, it brings her case directly within the provisions of the foregoing statute. As it appears that Mrs. Wingert was a resident of Washington, D. C., the note in her case would be taxable there, and she would not be required to list it in Tennessee.

She died in the fall of 1923, and it would not have been taxable as the property of her Tennessee executors until the 10th of Jan., 1924. It is therefore not shown that there was any delinquency for the preceding year, 1923, as to this note.

Giving effect, therefore, to the statute, Katherine Parker will pay one-half the costs of this case; and the defendants below, who appealed, will pay the other one-half. The cause will be remanded for a sale of the property, upon which the judgments have been declared a lien in accordance with the Chancellor's decree. A lien is declared upon the recovery of the said Katherine Parker for all taxes that may be due for the year 1923 in favor of the State of Tennessee, county of Knox, and of the municipality of Knoxville, by reason of the ownership of said note.

Thompson and Portrum, JJ., concur.